# Hines *et al. v.* Chicago Building & Manufacturing Co.

*Bill in Equity to enforce Mechanic's and Material-man's Lien.*

1. *Mechanic's and material-man's lien; how it attaches under subscription contract.*—Where several parties enter into a contract for the construction of a building upon a certain lot owned by them as tenants in common, each subscribing a certain amount and the contract binding each separately to the payment only of the amount subscribed by him, and the interest in the property of each of the owners being in the proportion which the amount of his individual subscription to the common fund bore to the aggregate amount of all of the subscription, a mechanic's and material-man's lien, as given under the statute (Code of 1886, § 3018), does not attach to the entire lot and building for the aggregate of the several obligations remaining unpaid at the completion of the contract, but upon the undivided interest of each of the owners in common of the property for the amount personally owing by him for the construction of the building.

2. *Same; same; bill to enforce lien against property owned in common; when all tenants in common proper parties.*—Where, on a bill filed to establish and enforce a mechanic's and material-man's lien against property owned in common, it is disclosed that the lien is enforceable only upon the undivided interest in the property of some of the tenants in common, if the land be of such character that it can not be equitably partitioned, the court can, under the provisions of the statute (Code of 1886, § 3262), if the complainant is entitled to relief, order the sale of the entire land for division among the tenants in common, and visit the lien sought to be enforced upon the share of the proceeds of the co-tenants whose interests are subject to the lien; and to such a bill all of the tenants in common are proper parties defendant.

3. *Same; waiver of lien; when giving of note for claim does not constitute a waiver of the lien.*—The giving of notes for a claim on which the payee is entitled to a material-man's lien does not operate as payment of the claim, nor does the acceptance of such notes constitute a waiver of the lien, if the notes so given mature before the expiration of the time, as prescribed by the statute (Code of 1886, § 3022), for the institution of proceedings to enforce such lien.

[Hines *et al*. v. Chicago Building & Manufacturing Co.]

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. W. H. TAYLOE.

The bill in this case was filed by the appellee, the Chicago Building & Manufacturing Company, against the appellants to establish and enforce a mechanic's and material-man's lien. The facts of the case are sufficiently stated in the opinion.

Upon the submission of the cause upon the demurrers and motion to dismiss the bill for the want of equity, interposed by the respondents, the chancellor rendered a decree overruling both the demurrers and the motion. From this decree the respondents appeal, and assign the rendition thereof as error.

LUM DUKE, for appellants.—1. Complainant's right of relief in this cause must rest upon the statutes as found in the Code of 1886, providing for mechanic's and material-man's lien and the enforcement thereof, since the act of February 12, 1891, amendatory thereof, has been declared unconstitutional.—*Randolph v. Builders' & Painters' Supply Co.*, 106 Ala. 501. The act of February 18, 1895, page 1238 of the Acts of 1894-95, has no application in this case, the same having been passed subsequent to the making and execution of the contract sued on. "Statutes creating or enlarging a lien do not operate retrospectively."—*Smith v. Kolb*, 58 Ala. 645. The rights and remedies created by or under the mechanic's lien law are extraordinary and in derogation of the common law, and, therefore, should be strictly followed and strictly construed.—*Copeland v. Kehoe*, 67 Ala. 594 ; *Wimberly v. Mayberry*, 94 Ala. 240.

2. We insist that when taken in connection with the averments of the bill and with the action of the parties subsequent to the making thereof, as averred in the bill, it is a several contract, separate and distinct as to each one of the respondents, with no joint liability thereunder. And if the contract is several, and the liabilities of the respondents separate and distinct, then the bill is multifarious and without equity. For, although the subject matter of the several contract with the respondents may be the same, yet it would hardly be seriously contended that on that account a complainant could litigate at one and the same time and in the same cause of action with two or more parties whose contracts

[Hines *et al.* v. Chicago Building & Manufacturing Co.]

are different in amount and extent of liability; for the reasons that this would be requiring one respondent to answer a bill averring a liability for a particular sum against a co-respondent with which he had no connection or concern, and would also require as many distinct judgments or decrees as there were respondents in the bill. The rule as to multifariousness is, that "Where a party is brought as a defendant upon a record, with a large portion of which, and of the case by which, he has no connection whatever," the bill is multifarious.— Story's Equity Pleadings, § 530; 1 Daniel's Chancery Pleading & Practice, p. 335; *Davis & R. B. & Manfg. Co. v. Jones,* 66 Fed. Rep. 124.

3. By the acceptance of the notes there was a waiver of the lien sought to be enforced by the complainant. *Lehman, Durr & Co. v. Van Winkle & Co.,* 92 Ala. 443; *Lane v. Jones,* 79 Ala. 156.

ROBINSON & DUKE, *contra.*—1. The bill is not multifarious. "Where the object of the suit is single, it is no objection that different defendants have separate interests in distinct and independent questions, provided they are all connected with and arise out of the single object of the suit. The reason of this rule is that courts are averse to a multiplicity of suits, and always strive to prevent unnecessary and useless litigation."—*Randle v. Boyd,* 73 Ala. 282; *Larkins v. Biddle,* 21 Ala. 252; *Bolman v. Lohman,* 74 Ala. 507; *Lehman v. Meyer,* 67 Ala. 396; *Hill v. Moone,* 104 Ala. 353; Code of 1886, § 3030; *Trammell v. Hudmon,* 78 Ala. 222.

Every party defendant is alleged to be interested in the property charged with the lien.—*Collins v. Stix,* 96 Ala. 338; 15 Am. & Eng. Enc. of Law, 169–170. By statute, in such actions as this, "All persons interested in the matter in controversy or in the property charged with the lien, may be made parties."

2. The bill is not prematurely filed. It could not have been filed later and gotten into court before the time required by law in which it should have been filed. And the fact that some of the notes were not due when the bill was filed would not affect the complainant's right to enforce its lien. Equity has power to enforce and adjust all liens and claims, whether due or not. *Wimberly v. Mayberry,* 94 Ala. 240; *Building & Loan Co.*

*v. May & Thomas Hardware Co.*, 99 Ala. 276. And if the bill were prematurely filed it could only be taken advantage of by the parties against whom it was prematurely filed and would not affect the entire suit. *Robison v. Robison*, 44 Ala. 227; 3 Brickell's Digest, 373, § 94.

3. Taking a note or personal security for the amount due does not waive the lien, nor does it satisfy the debt unless it was the express intention of the parties that it should do so.—*Lane v. Jones*, 79 Ala. 156; *Leftwich Lumber Co. v. Florence M. B. L. & S. Assn.*, 104 Ala. 584; *Coleman v. Siler*, 74 Ala. 435.

4. But it is contended that some of the notes fell due after the time in which suit should have been brought to enforce the lien, and that, therefore, the lien was lost. So also as to those who have paid up their indebtedness. We do not concede this. When a person stands by and consents to another placing a lien on property in which he has an interest, and especially when he joins in with him in doing so, then his property will be subject to the lien and can not be raised from it except by paying the entire debt for which the lien is made. But if the contention is true, then the lien would only be lost as to those notes which were not due on the filing of the bill and as to those who had paid up their subscription. There is certainly a lien as to each of the others. Each contracted for materials and labor to improve his property, and each got the benefit of such contract. And the lien as to them would be enforced. The makers of the notes which were extended beyond the time for the enforement of the lien and those who had settled up their indebtedness before suit was brought are still, even under this phase of the case, proper parties to the bill. They own an interest in the land upon which the lien is claimed.—Code of 1886, § 3030. Under the general prayer the property may be sold for the enforcement of the lien and for partition, the necessity of the sale being shown. Complainant certainly has a remedy and its rights can all be adjusted under this bill, as well as the rights of all the rest of the parties to the bill.—*Lyon v. Powell*, 78 Ala. 351.

HEAD, J.—On December 28th, 1894, the appellee, the Chicago Building & Manufacturing Co., entered

[Hines *et al.* v. Chicago Building & Manufacturing Co.]

into a written contract with appellants, over forty in number, for the building by appellee of a butter and cheese factory, according to a plan and specifications prescribed in the contract. The materials were furnished and the building erected according to the contract, upon a parcel of land particularly described in the bill. The stipulated price was $5,250, payable in cash at the completion of the factory. The contract then continued with the following clauses : "We the subscribers hereto agree to pay the above amount for said butter and cheese factory when completed, said building to be completed within ninety days or thereabout after the above amount ($5,250) is subscribed. Any portion of the amount subscribed not paid according to contract, shall bear legal rate of interest.

"As soon as the above amount ($5,250) is subscribed, or in a reasonable time thereafter, the said subscribers agree to incorporate under the laws of the State, as therein provided, fixing the aggregate amount of stock at not less than the amount subscribed, to be divided into shares of $100 each, said share or shares, as above stated, to be issued to the subscribers hereto, in proportion to their paid up interest herein, and it is herein agreed that each stockholder shall be liable to the corporation only for the amount subscribed by him and no more.

"Subscriptions may be obtained to this agreement to any amount in excess of $5,250, the price of factory proper as above, and all subscriptions shall belong to the first party until the full contract price has been fully collected therefor. The remainder of the subscription after the first party has been fully paid is the property of the second party, and may then be by second party also collected and used as working capital."

There is another provision contained in the specifications annexed to the body of the contract, that whether the building be "occupied by second party [appellants] or its incorporation or its successors, there shall be no waiver of original and joint liability until the contract price is fully paid." The contract was signed by appellee, *per* · Dixon C. Williams, "V. P. Special agent," just preceding the annexed specifications of the building. At the end of the specifications, it was signed by the forty-four appellants, in the following

41

form, to-wit: There were three columns, the first headed, "Names of Subscribers," which was followed beneath by the names of the appellants; the second, "Number of Shares," followed by a numeral opposite each name, the numerals varying from one to five; and the third, "Amount of stock after Incorporation," followed by an amount, stated in figures, set opposite each name, the amounts varying from fifty to five hundred.

The purpose of the bill, which was filed by appellee, was to establish and enforce a mechanic's and materialman's lien upon the lot and building for an unpaid portion of the contract price.

The bill alleges the execution of the contract by complainant and respondents, and the completion of the building on the lot described; the amount of the contract price remaining unpaid, and the filing of a lien, a copy of which is exhibited, in the office of the probate judge of the proper county, within the time required by the statute. It further alleges that the respondents are the owners of the land and factory; that they have failed to organize a corporation as agreed in the contract, but have taken possession of the land and factory, and are now holding and using the same in the manufacture and sale of butter and cheese.

After stating that, under said contract, there was due orator March 19, 1895, $5,308, which had not been paid, the bill proceeds to aver as follows: "This amount is made up of the following amounts which were agreed to be paid by the following persons of the said party of the second part to the said contract, to-wit: $50 balance due by G. H. Lancaster, $200 by G. T. Hudson, $100 each by W. C. Brooks, W. B. Whatley, J. P. Snuggs, C. D. Dodgen, G. D. Floyd and J. C. Holliday, and $50 by J. H. Finley. Each of these amounts was due on the 19th day of March, 1895, and said person gave no note or other evidence of debt to orator for the same except the said contract, exhibit 'A.' The following persons of the said party of the second part executed their notes to orator for the amount that they had agreed to pay under said contract at the times as specified in said notes, to-wit: J. J. Dewberry, Ada Dodgen, C. B. Ward, M. J. Strickland, B. F. Coleman, W. W. Gery, V. W. Sherman, J. E. Henderson, J. W. Brittain, R. S. Snuggs, G. P.

Sutherlin, J. H. Durham, W. J. Johnson, F. M. Floyd, R. L. Gilham, Miles Hundley, J. H. Hall, D. G. M. Smith, G. W. Holliday, T. J. Crowder, J. T. Rutland, J. H. Smith, A. J. Thompson, J. C. Kirkland. A copy of which said notes showing the time when they are payable, amount of the same and the credits thereon, are hereto attached as exhibit 'C' and made a part of this bill.''

The several amounts of the notes so taken by complainant corresponded, respectively, with the amounts subscribed by the respective makers, as indicated by their subscriptions to said contract, as herein above explained. The notes were all dated March 19, 1895, and of them, one was payable one day; seventeen, ninety days, one, four months; and four, six months, after date; one December 1, 1895, and the other November 1, 1896. All the respondents whose names are not above mentioned as being still in arrears, paid the amounts subscribed by them in full. It is observed that the six months prescribed by statute for the institution of suits to enforce liens of this character, expired September 19, 1895. The bill was filed September 17, 1895, hence, before the maturity of six of the notes. There are thus, four classes of respondents, viz. : (1) those who paid their subscriptions before the bill was filed; (2) those whose notes had not matured; (3) those whose notes had matured when the bill was filed; and (4) those who had not paid nor given notes.

The question is properly raised by demurrers whether those of the first and the second classes are proper parties defendant; and in it is practically involved the merits of the whole controversy, so far as now presented to us by any of the grounds of demurrer assigned to the bill.

Whatever might be said of the meaning and effect, upon the face of the instrument, of the obligations assumed by the respondents, in and by the written agreement, aforesaid, in reference to payment of the contract price of the work, there can be no doubt that, in view of the construction placed upon the contract by the parties themselves, and their acts and dealings, bringing about changed obligations and relations, in pursuance and furtherance of such construction; and in view of the construction now made by the bill itself, and the

brief of complainant's counsel, it is our duty to hold that the writing entered into by the parties, so far as concern, payment of the stipulated price of the work, evidenced separate and distinct contracts on the part of the said subscribers, binding each only to the payment of the amount subscribed by him. They were neither joint principals nor sureties of each other. Their obligations to pay were the same as if each had entered into a separate writing, in his own behalf alone, binding himself only to pay the specified amount of his subscription. This being so, the inquiry arises, what is the proper application and adjustment of the mechanic's lien statute to such a status? Does the lien attach upon the entire lot and building for the aggregate of the several obligations remaining unpaid, or upon the undivided interest of each of the owners in common of the property for the amount personally owing by him for the construction of the building?

The statute, Code of 1886, section 3018, provides, that "Every mechanic, or other person, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for, any building or improvement on land, or for repairing same, *under or by virtue of any contract with the owner or proprietor thereof*, his agent, trustee, contractor, or subcontractor, upon complying with the provisions of this chapter, shall have a lien therefor on such building or improvement, and on the land on which the same is situated, to the extent, *in ownership, of all the right, title and interest owned therein by such owner or proprietor,*" &c. We have italicised the words of this provision prominently bearing upon the question under discussion.

In this case, as we have seen, the contract was (or rather the several contracts were) made by the owners of the property themselves, as tenants in common. Each of these owners' interest in the property was in the proportion which the amount of his individual subscription to the common fund bore to the aggregate amount of such subscriptions.

It thus seems to us quite clear, and we so hold, that each separate contract for the payment of money, of each of the several subscribers to the common fund, created, upon compliance with the other essential provisions of the statute, a distinct lien upon the undivided

interest in the property of each subscriber for the amount he had personally obligated himself to pay, and that the liens now to be enforced must be circumscribed within these limits. If, as we have held to be true, it was the intent of the agreement to exclude all liability upon each subscriber for any part of the contract price of the work, beyond the amount of his own subscription, it is manifest such intent would be subverted and a greater liability imposed upon a subscriber, if his undivided interest in the property should be charged with a lien to secure the arrearages of other subscribers.

It results from this conclusion, that the interests in the property of those who have paid their subscriptions, and those whose obligations to pay were extended to a day beyond the filing of the bill, can, in no event, be condemned, in this suit, to the payment of any sum whatever. So that, these two classes of respondents are not proper parties defendant, unless they are so upon another consideration to which we will now advert.

Assuming, as the respondents have done, that there is no other objection to the validity of the asserted lien, it will be perceived from what we have said, that the complainant has a separate and distinct lien upon the undivided interest in the property of each subscriber, for the amount subscribed by him. There may be two methods of enforcing this lien: 1. By the ascertainment of the amount due by each, and separate condemnation and sale of his undivided interest in the property for the satisfaction thereof. 2. By the sale of the entire property for partition, or division of the proceeds, among the several owners thereof, and condemnation of the respective shares of such proceeds, of the parties subject to the liens, to the satisfaction of the sums respectively due by them. A resort to the latter method, by which the property of the parties who are in no default to the complainant, namely, the respondents who have paid what they owed and those who are sued in advance of the maturity of their debts, and, indeed, against whom the complainant forfeited its lien by extending payment beyond the time required for bringing suit, may be sold, should be had only when the sale of the entire land is necessary to the final adjustment of all existing rights and equities—to complete relief—and will operate no detriment to any of the parties. This

principle is declared in *Lyon v. Powell*, 78 Ala. 351. The bill, in that case, was, in part, for the foreclosure of a mortgage upon an undivided interest in land of a tenant in common, and, like this case, was before the court on appeal from a decree on a demurrer to the bill, and the court said : "But, as this case is before us from a decree on a demurrer to the bill, and as the necessity for sale [of the entire land] may not be raised on the final hearing on the merits, we shall refrain from expressing any definite and positive opinion, until a decision of the question becomes necessary. If, when jurisdiction has attached for the foreclosure of a mortgage on the undivided interest of a tenant in common, the court may, under proper or compulsory circumstances, make partition in the same suit, the demurrer was improperly sustained." In the same case, after discussing whether a mortgagee of the interest of a tenant in common may, before foreclosure, maintain a bill for partition, except as incident to other equitable relief, the court said : "If it be conceded that a mortgagee can not, before foreclosure, institute proceedings for the primary and original purpose of partition, when the jurisdiction attaches for foreclosure, the court may make partition, so as to allot and segregate from the interests of the other tenants in common the part to be sold for the satisfaction of the mortgage." And, we now add, that since the statute, Code of 1886, section 3262, (which was enacted since the above decision was rendered) confers upon the chancery court jurisdiction to sell lands for tenants in common for division among them when the same can not be equitably partitioned, that court possesses the power, upon a like bill for foreclosure, to order the sale of the entire land, if the land be of such character that it can not be equitably partitioned, and to visit the lien sought to be enforced upon the share of the proceeds of the person whose interest is subject to the lien. If this course is to be pursued, it is clear that all the tenants in common should be before the court. Whether it shall be pursued or not can best be determined after the tenants in common have answered the bill and the proofs taken, as indicated by the court in the case above cited, and as, in effect, held by the chancellor in this case. It may be said that we judicially know, in this case, that the lot of one acre with the factory, such as the bill de-

scribes, thereon, can not be equitably partitioned among forty-four owners, in the proportions held by the owners here, without a sale. Moreover if this method be not pursued, there would necessarily be as many separate condemnations and sales as there may be undivided interests subject to liens, resulting, possibly, in sacrifices of property and greatly increased expense. The case should, therefore, stand open, until a hearing on the merits, when it can be determined by the chancellor whether it is best, for all concerned, to sell the undivided interests of the debtor owners, or the entire land for partition and foreclosure. With this view, it is proper that all the owners be and remain before the court.

What we have said, as well as other principles, which will suggest themselves, will serve to show, we think, the propriety of one suit for enforcement of all the several liens existing against those respondents who are subject to liens.

The giving of the notes by this class of the respondents (those whose notes matured before the bill was filed) did not operate as payment of their indebtedness, and was no waiver of the liens given by the statute.

Affirmed.