MERRITT WILLIAMS *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY.

HUSBAND AND WIFE.   *Code* 1892, § 2294.   *Transfers of property.   Third persons.*

> A husband who manages his wife's farm, under a verbal understanding with her that he is to own the crops, is not the owner of cotton produced thereon and cannot maintain a suit for its negligent destruction by a third person, under Code 1892, § 2294, providing that a transfer of property between husband and wife shall not be valid as against third parties, unless it be in writing and filed for record, and that possession of the property shall not be equivalent to filing the writing for record.

FROM the circuit court of Washington county.

HON. A. McC. KIMBROUGH, Chancellor.

Williams, appellant, was plaintiff in the court below; the railroad company, appellee, was defendant there.

The suit was for damages in the sum of $1,362.90 for cotton burned by the defendant. After all the evidence had been introduced defendant moved to exclude it, and for a peremptory instruction for defendant, on the ground that it was shown by the plaintiff's evidence that the cotton was raised on his wife's farm, and that there was no written transfer of it acknowledged

and filed for record, as required by section 2294 of the Code of
1892, and that the cotton did not belong to plaintiff, but to his
wife. The opinion of the court gives the evidence on this point.
The motion was sustained, and there were verdict and judgment
for defendant. Plaintiff appealed to the supreme court.

The code section involved is as follows:

"2294 (1178). *What necessary to validity of conveyance.*—
A transfer or conveyance of goods and chattels or lands between
husband and wife shall not be valid as against any third per-
son, unless the transfer or conveyance be in writing and ac-
knowledged and filed for record as a mortgage or deed of trust
is required to be; and possession of the property shall not be
equivalent to filing the writing for record, but, to affect third
persons, the writing must be filed for record."

*Thomas & Rose,* for appellant.

The first enactment in our state declaring the invalidity of
transfers between husband and wife as against third persons,
unless clothed with certain formalities and made public by
record, is found in section 1178, Code of 1880. The same sec-
tion, with some slight verbal changes, is incorporated into the
Code of 1892 as section 2294. Prior to the adoption of the
Code of 1880, a mischief existed which needed a remedy.
What was the mischief? It was the facility with which fraud
could be practiced by pretended transfers of property between
husband and wife and the difficulty in detecting it. *Gregory* v.
*Dodds,* 60 Miss., 552. The fraud could only be perpetrated on
creditors or purchasers, or those who had rights of some kind
against the husband or wife, or against the property of one of
them.

In *Heny* v. *Dillard,* 68 Miss., 536, the facts show the wife's
purchase of a mare with the proceeds of a bale of cotton given
her by her husband. Creditors of the husband attacked the
right of the wife upon the ground that there had been no trans-

fer of the cotton as required by section 1178 of the Code of 1880, and that she had no better right to property gotten in exchange than that derived by an invalid gift from her husband. The court disposed of the case by saying that the facts, fairly considered, put the rights of the appellee (the wife) to the property in suit wholly outside of the rule established by section 1178. We cite this case to show the recognition by the court in construing this statute that there may be cases in which a third person cannot attack a transfer good between the parties, and that "any third person does not mean under all circumstances every third person."

In *Underwood* v. *Ainsworth,* 72 Miss., 328, the purpose of the statute is decleared to be to "invalidate transfers and conveyances between husband and wife of property which is claimed by creditors or others to be that of the spouse who, but for the transfer of the conveyance, would be owner." The purpose and design of the statute could not be more clearly set forth.

"It is familiar learning that, in the construction of statutes, courts chiefly desire to reach and know the real intention of the framers of the law, and, reaching and knowing it, then to adopt that interpretation which will meet the real meaning of the legislature, though such interpretation may beyond or within, wider or narrower than, the mere letter of the enactment." *Board of Education* v. *Railroad Co.,* 72 Miss., 239.

"The reason of the law should prevail over its letter." *United States* v. *Kirby,* 74 U. S. Wall., 482.

A bare tort feasor cannot set up in defense the title of a third person between whom and himself there is no privity of connection. *Omaha Grant Smelting R. R. Co.* v. *Tabor* (Colo.), 5 L. R. A., 242.

Appellant was in lawful possession of the property with the consent of his wife, was the bailee thereof, and had such special property therein as entitled him to maintain an action in his

own name for its loss or injury, and this although he might not be liable to the owner. He could have sued in his own name in trover. *Johnson* v. *Gulf, etc., R. Co.,* 34 So. Rep., 257, *Ante,* 452. And his possession alone was sufficient to support an action of trespass or trover. *Harris* v. *Newman,* 5 How. (Miss.), 654. The rule applies both to real estate and personalty. *Railroad Co.* v. *Currie,* 62 Miss., 506.

In the Am. & Eng. Enc., Vol. 3, p. 761, 2d ed., the rule is stated to be "as respects third persons the bailee has a special property in the thing bailed, sufficient to protect it against wrong-doers."

This rule is approved by our courts in *Baggett* v. *McCormack,* 73 Miss., 554.


*Percy & Campbell,* for appellee.

Section 2294 of the Code of 1892, as amended by chapter 90 of the laws of 1900, makes a transfer between husband and wife invalid as against any third person, unless the transfer be in writing and acknowledged and filed for record as a mortgage or deed of trust is required to be. Section 1512, of the Code of 1892, provides that the word "person," when used in any statute, shall apply to artificial as well as natural persons. The expression in the statute as against "any third person" is broad and comprehensive, including any person, natural or artificial, other than the husband and wife, and applies to tort feasors, as well as persons dealing with the husband or wife, or occupying a contractual relation with them. The only way to make the statute effective is to enforce it exactly as written. *Gregory* v. *Dodds,* 60 Miss., 549; *Montgomery* v. *Scott,* 61 Miss., 409.

The appellee is a "third person" within the statute. The statute is a rule of evidence, and, by virtue of it, neither the husband nor wife can prove, as against "any third person," a

transfer of goods and chattels from one to the other, except as provided by the statute.

Section 2293, of the Code of 1892, makes it unlawful for the husband to carry on business in his own name, or on his own account, with any of his wife's property, as to all persons "dealing" with him without notice; while section 2294 makes transfers between husband and wife void as against "any third person." The former section affects only persons occupying some contractual relation with the husband or wife, while the latter applies in favor of "any third person," even a tort feasor. Under the former section "notice" of the condition of things, on the part of the person dealing with the husband binds him; while under the latter, "notice" amounts to nothing; and that is because the latter section is a rule of evidence to be applied in favor of all persons, other than the husband or wife.

The record fails to show that appellant was bailee of the cotton in such sense as to entitle him to maintain this suit. He does not sue as bailee, but as owner, and he sought to show by his testimony that he was owner. He made no pretense of founding his right on the fact that he was bailee. That a bailee may maintain a suit against a wrong-doer, for injury to property in his possession, is well settled in this state and elsewhere, but to justify such suit the property must have been in his possession at the time that it was injured. The cotton in controversy was not in appellant's possession, but when destroyed was lying on the platform belonging to his wife, and it was in her possession. Just as well say that the husband could maintain a suit for trespass upon his wife's land, because, living with his wife, he was in possession of her lands. The fact that appellant was living with his wife on her plantation, where the cotton in controversy was grown, and was lying at the time of its destruction, could not in law be construed as giving him possession of the cotton. Having been grown on his wife's land and ginned and baled at her gin, and being on her platform, the cotton was in

her possession and, being in her possession at the time it was destroyed and not in appellant's possession, he was not entitled to maintain this suit as bailee, and he should not be allowed to do so.

*Mayes & Longstreet* and *J. M. Dickinson,* on same side.

The cotton was at one time unquestionably the property of Mrs. Williams, the wife. It was grown on her plantation, made by her tenants, with her farming equipment, ginned in the gin on the wife's land, and stored on the platform on the wife's land. The plaintiff sued—one of the items claimed—for the recovery of $15 damages to the platform, and he had under the proof no right to sue for damages to the platform or gin or cotton on the platform.

When did the title to this cotton ever vest in plaintiff? When did the wife ever divest herself of her legal rights in and to it, and by what sort of conveyance? The plaintiff fixes no time when, nor terms by which, any transfer was ever made to him. He testifies, "I have always shipped it as mine," but this appropriation did not operate to transfer the title. The vague, undefined "understanding" between husband and wife was ineffectual. There must have been a specific agreement or transfer in writing signed, acknowledged and filed for record. Section 2294, Code 1892; *Walker* v. *Marseilles,* 70 Miss., 283; *Lea* v. *Bank,* 72 Miss., 317, 328; *Paine* v. *Sykes,* 73 Miss., 353.

Plaintiff has not framed his pleadings, nor stated his right in such form as to entitle him to recover as bailee, he has sued as absolute owner, and in this court for the first time does he appear claiming as bailee.

In all bailments the pleadings or proof must show some contractual obligation resting on the bailee to account to the bailor, either for the property itself or for its proceeds, some retention of title or interest in the bailor. The testimony and theory of plaintiff is, that the wife has parted with all right or

interest in the cotton, and has transferred it to him; that it is the property of plaintiff, because his wife consents that he may appropriate it; that he is sole owner, with no responsibility to account in any wise to the wife resting upon him.

The statute, section 2294, was not for the purpose, primarily, of aiding in the collection of debts, nor were the creditors of chief concern; it was enacted in the interest of good morals, and from public policy, it diminishes dishonesty and fraud, and to prevent the close and sacred relation of husband and wife from being abused, and from being constantly converted into a means of oppression and wrong.

Section 2294 declares no restriction of right to object to such transfers to persons having business transactions with husband or wife, it declares that such transfer of property as is asserted in this case shall be void "as against any third person unless the transfer or conveyance be in writing," etc. It is a rule of evidence.

Argued orally by *A. J. Rose,* for appellant, and by *James C. Longstreet,* for appellee.

CALHOON, J., delivered the opinion of the court.

The evidence on the question of the ownership of this cotton and its possession is as follows: "Q. Mr. Williams, you spoke in your examination about the cotton being your cotton. Was it yours or your wife's? A. Mine. Q. Where was it raised? A. At home. Q. Who owns the place? A. My wife. Q. And this cotton was raised there? A. Yes, sir. It was shipped in my name. Q. How came the cotton yours, if the place was hers? A. I have always shipped it as mine. Q. I know. It had not been shipped yet, and your wife owns the property? A. But not the crop. Q. How do you hold that property? Is there any contract between you and your wife? A. No written contract, but an understanding. Q. So the land is hers that produced this cotton, and there is simply an understanding

between you and her that the crop is yours, and no contract on record? A. No, sir; none on record. Q. Your only claim to this cotton results from an understanding between you and your wife? A. Yes, sir. I furnish the capital to raise it. Q. Then there was no contract between you and her, oral or in writing, but simply an understanding.. A. Yes, sir; simply an understanding. Q. Mr. Campbell asked you about your property. That cotton was in your custody and in your control by consent of your wife? You were then owner of that cotton? A. Yes, sir; it was shipped in my name. Q. No one had a claim to that cotton? A. No one. Q. Your wife makes no claim to that cotton? A. No, sir. (Objected to. Objection sustained.) Q. In whose possession was that cotton? A. Mine. Q. Did any one have a right to that cotton? (Objected to. Objection sustained.) Q. Mr. Williams, was that platform and gin on your wife's land? A. Yes, sir. Q. Who made the cotton? A. I attended to it, and furnished the capital for it." From this we deduce the conclusion that the plaintiff was certainly not in legal possession of the cotton as owner, bailee, or otherwise. It had not been shipped. It was grown on his wife's land, ginned at her gin, and placed for shipment on a platform belonging to her. The use of the ambiguous word "understanding" does not sufficiently show a meeting of the minds in a contract or agreement intended to be obligatory on both husband and wife, so as to make a judgment pleadable as an adjudication against her. From the context and the circumstances the witness perhaps used it to express merely his own confidence in the purpose of his wife without actual agreement or contract. "It falls short of alleging a distinct express contract." *Black* v. *City,* 19 S. C., 419, 45 Am. Rep., 785.

*Affirmed.*