(88 South. 562)

## C. A. DUNHAM CO. v. SHEFFIELD REALTY CO. et al. (8 Div. 283.)

(Supreme Court of Alabama. April 7, 1921.)

1. Mechanics' liens 260(3)—Evidence held to show that limitations had run against claim for heating plant to be paid for in 30 days.

In a bill against a realty company and its trustee in bankruptcy to enforce a materialman's lien for a heating system furnished for defendant's hotel building, wherein the six months' statute of limitations (Code 1907, § 4777) was interposed as a defense, evidence held to sustain a finding that the apparatus furnished was to be paid for within 30 days of its delivery, so that the claim was barred, notwithstanding that the whole account was not to fall due until a certain time within six months before commencement of suit.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] Ante, p. 265.

**2. Mechanics' liens** ⊕⇒211(1)—**Acceptance of note waives materialman's lien.**

Acceptance of a note by a materialman operates as a waiver of the materialman's lien under the statute.

**3. Mechanics' liens** ⊕⇒260(3)—**Furnishing extra flange for pump in heating system held not to make contract a continuous one.**

In a materialman's suit ·to enforce a lien for a heating apparatus for a hotel building, where the six months' statute of limitations was interposed as a defense, the mere furnishing of an extra flange for a rotary pump which was an essential part of the heating system *held* not to make the contract a continuous one so as to bring it within the statute of limitations, where the price of the flange had been included in the original bill.

**4. Mechanics' liens** ⊕⇒260(3) — **If there is sufficient time between items to file lien, it will be presumed that they belong to separate contracts.**

In proceedings to enforce a materialman's lien, if there is a hiatus between the items furnished sufficiently to permit the filing of a lien, the presumption is that the items belong to separate contracts.

Appeal from Circuit Court, Colbert County; C. P. Almon, Judge.

Bill by the C. A. Dunham Company against the Sheffield Realty Company and its trustee in bankruptcy to enforce a materialman's lien. Decree for respondents, and complainant appeals. Affirmed.

J. T. Kirk, of Tuscumbia, for appellant.

The time within which a lien must be filed begins to run from the delivery of the last item. 79 Ala. 156; 88 Ala. 509, 7 South. 331. The taking of the note did not destroy the lien. 115 Ala. 637, 22 South. 160.

Andrews & Peach, of Sheffield, for appellees.

Cases cited by the appellant clearly demonstrate the correctness of the final decree.

SAYRE, J. This bill was filed to enforce a lien for the price of a heating system furnished by appellant to appellee for appellee's hotel building in the city of Sheffield. Defendant pleaded the statute of limitation of six months (section 4777 of the Code), and upon that plea complainant's bill was dismissed.

Complainant's contract obligation ended with the delivery of the heating apparatus, which was to be installed by defendant. All parts—save one small item, to be noted hereafter—were delivered to a carrier in March, 1918. Complainant contends that its account did not fall due until November, and its witness testifies, in general terms, that "the whole of the account became due and payable about November 1, 1918." But in the same connection he says:

"There was no specific agreement relative to the date on which the account should be paid further than an understanding at the time of taking the order that the material would be paid for when it was connected up with the building."

The invoice shows the price to have been $2,538, and that payment was expected at 30 days, and it appears without contradiction that on August 16, 1918, defendant on complainant's request executed its promissory note for the amount stated above, payable 60 days after date, with J. W. Worthington as surety. This note is explained by complainant's witness in this language:

"The building progressed very slowly—much slower than was anticipated—and about the middle of August, 1918, complainants thought their accounts for material should be paid without waiting until the completion of the building, and the Sheffield Realty Company then agreed that it would make payment for the goods already shipped on October 16, 1918. This was the only agreement made with reference to the maturity or accrual of the indebtedness for said material."

This bill was filed Feburary 7, 1919, seeking a lien for the sum of $2,542.85.

In October, 1918, when that part of the installing process was reached, it was discovered that a flange—known as a "companion flange," an indispensable. part of the rotary vacuum pump which was an essential part of the heating system—was missing, and to supply this flange, price $4.85, defendant gave and complainant filled a new order, October 16, 1918, and upon the new order complainant seems to base its contention that materials were furnished on a single continuing contract which was not completed until October, and hence that its bill in this cause was filed, to quote the statute, "within six months after the maturity of the entire indebtedness."

[1, 2] Pretermitting, for the moment, consideration of the effect of the order for the flange, we think, on the evidence in this record, that the apparatus furnished by complainant was to be paid for within 30 days of' its delivery to defendant (College Court Co. v. Letcher Lumber Co., 201 Ala. 361, 78 South. 217), which was effected by a delivery to the carrier. Complainant's witness testifies to an "understanding," but "understanding" is an ambiguous word and dubiously meets the necessities of a case which, in view of the invoice, called for proof of the terms of an agreement or contract to a different effect. Williams v. Railroad Co., 82 Miss. 659, 35 South. 169. Except upon the hypothesis that the apparatus was to be paid for 30 days after delivery, we cannot account for the invoice which contained these notations: "2% 10 days—30 days net—f. o. b. origin of shipment." And at another place, "Terms

---

2% cash and 30 da net," or the fact that the note with surety was asked and given in August, or the testimony of defendant's witness tending to show that the contract was expressed in the invoice. Such being the case, the entire claim, in the absence of the note, would have matured prior to the date of the maturity of the note, and, necessarily, on the hypothesis on which we are now proceeding, acceptance of the note operated as a waiver of a lien under the statute. Hines v. Chicago Co., 115 Ala. 637, 22 South. 160.

[3, 4] We have no doubt whatever that the flange which has been mentioned was included among the parts of the pump, and so of the heating system the subject of the original contract between the parties. Its price therefore was included in the amount of the note. The parties appear not to have known, even when the testimony was taken, whether this flange was never shipped or whether it was lost after shipment. The competent evidence throws no light upon that question. If it was never shipped, appellant, complainant, is claiming a lien in excess of the agreed value of the goods first delivered by the amount of $4.85. If it was lost after delivery and reordered more than six months later, it cannot be contended with reason, in the circumstances we have stated, that it was the last item in one single continuing contract or that its order and shipment revived a contract which had before its order or shipment been merged in the note and which without the note would have been barred by the statute of limitation. Manifestly, the item of the flange ordered in October did not figure as a part of the original contract, for defendant did not need two flanges to perform the work of one; more than six months elapsed between the first contract and the ordering of the flange; and the authorities hold that, if there is an hiatus between the items sufficient to permit the filing of a lien, the presumption is that the items belong to separate contracts. Rockel on Mech. Liens, § 98.

We conclude therefore that the decree in the trial court was free from error.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.